UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MAURICE HOLLIS,

                Petitioner,

v.                                          9:20-CV-0594
                                                   (TJM)
ATTORNEY GENERAL WILLIAM BARR; WARDEN
S. LOVETT,

                Respondents.

---

APPEARANCES:                                        OF COUNSEL:

MAURICE HOLLIS
72676-054
Petitioner, pro se
Ray Brook Federal Correctional Institute
P.O. Box 900
Ray Brook, NY 12977

HON. ANTIONETTE T. BACON                         EMER M. STACK, ESQ.
Acting United States Attorney for the                Ass't United States Attorney
Northern District of New York
100 South Clinton Street
P.O. Box 7198
Syracuse, New York 13261

THOMAS J. McAVOY
United States Senior District Judge

## DECISION and ORDER

### I.    INTRODUCTION

      Petitioner Maurice Hollis seeks federal habeas corpus relief pursuant to 28 U.S.C.

§2241.  Dkt. No. 1, Petition ("Pet.").  Respondent opposed the petition.  Dkt. No. 14.

Petitioner filed a reply.  Dkt. No. 16, Traverse.

### II.   BACKGROUND

### A.  Criminal Proceedings

In 2014, petitioner was convicted, in New York state court, of third degree criminal sale of a controlled substance and sentenced to three years of incarceration followed by three years of post-release supervision.  Dkt. No. 14-2 at 17-18, 24.[1]  Petitioner was incarcerated from approximately April 3, 2014, through December 18, 2014, when he was then released on supervision.  *Id.* at 24, 29.  Petitioner remained on supervision until May 19, 2015, when he was incarcerated in county jail while awaiting the results of a parole violation.  *Id.* at 24, 29, 40.

Petitioner agreed to go to Willard Drug Treatment and, on June 30, 2015, arrived at the facility.[2]  Dkt. No. 1-1 at 25, 28; Dkt. No. 14-2 at 24-25, 27, 29.  On July 29, 2015, a writ of habeas corpus *ad prosequendum* was issued ordering petitioner to be produced at the federal district court in White Plains on August 4, 2015, in connection with pending federal criminal charges.  Dkt. No. 14-1, Edith Rohmer Declaration ("Rohmer Decl."), ¶ 11; Dkt. No. 14-2 at 22; Dkt. No. 16 at 11.  On August 3, 2015, the day before petitioner was taken from Downstate Correctional Facility, an arrest warrant was issued commanding petitioner be brought before the United States District Court for the Southern District of New York ("Southern District") for petitioner's indictment on federal drug charges.  Dkt. No. 1-1 at 9, 14; Dkt. No. 16 at 11.

Petitioner was taken on the writ of *ad prosequendum* from August 4, 2015, through December 15, 2016.  Rohmer Decl. ¶ 14.  The petitioner ultimately pled guilty to three counts

---

[1]  With the exception of the Rohmer Declaration, Dkt. No. 14-1, the cited page numbers refer to those generated by the Court's electronic filing system.

[2]  "Willard is a drug treatment program for parolees and can be used as an alternative to incarceration for parole violators."  *Roundtree v. Bartlett*, No. 1:10-CV-0828, 2011 WL 666173, at *2 (W.D.N.Y. Feb. 11, 2011).

of using a communication device to facilitate a drug offense in violation of 21 U.S.C. §§ 843 and 841(b)(1). Dkt. No. 14-2 at 2-8, 37. On November 30, 2016, petitioner was sentenced by the Southern District to a total term of imprisonment of 96 months, to run consecutively to any state sentence. Rohmer Decl. ¶¶ 5-6; Dkt. No. 14-2 at 2-8.

On December 15, 2016, petitioner's state parole was also violated because he "refused to complete the Willard sentence[.]" Dkt. No. 1-1 at 25, 28. Accordingly, on December 24, 2016, petitioner was returned to state custody to serve his parole violation sentence. Rohmer Decl. ¶ 18; Dkt. No. 1-1 at 23. Petitioner's maximum expiration date for his state court custody was February 22, 2019. Dkt. No. 1-1 at 16; Dkt. No. 14-2 at 14, 18, 24-25, 29, 32.

On May 1, 2019, petitioner's period of New York State supervised release commenced and he was released on a federal detainer to begin serving his 96-month federal term of imprisonment. Rohmer Decl. ¶ 9; Dkt. No. 14-2 at 29, 38. On July 11, 2019, petitioner was committed to federal custody. Dkt. No. 14-2 at 37. Petitioner's projected statutory release date is June 22, 2024, and the expiration of his full term is August 28, 2025. *Id.* at 38. Petitioner is presently incarcerated at Ray Brook Federal Correctional Institute. *See e.g.* Traverse at 5.

### B. The BOP's Calculation of Petitioner's Sentence

In response to the filing of the instant petition, Edith Rohmer, a Management Analyst assigned to the Designation and Sentence Computation Center in Grand Prairie, Texas, did an audit of petitioner's sentence computation. Rohmer Decl. ¶ 1. Rohmer explained that she communicated extensively with various officials from New York Department of Corrections and Community Supervision ("DOCCS") and obtained several documents from

them related to petitioner's custody credit. *Id.* ¶ ¶ 13-18. These communications revealed that there were several periods of time for which petitioner did not receive any credit. *Id.* ¶ 15.

Specifically, DOCCS did not credit petitioner's time in temporary federal custody between his arraignment on federal charges and return to state custody, even though petitioner was merely "borrowed" from state custody for purposes of appearing for a federal criminal prosecution. Rohmer Decl. ¶ 13. Similarly, Rohmer found that petitioner did not received credit on his state sentence for time spent in custody from June 30, 2015, through August 4, 2015, and from December 15, 2015, through December 23, 2015, when petitioner was housed at the Willard Drug Treatment Program in connection with his parole violation. *Id.* ¶ 16; Dkt. No. 14-2 at 38. Moreover, petitioner remained in state custody in excess of his maximum expiration date, February 22, 2019, until he was released on a federal detainer on May 1, 2019. Rohmer Decl. ¶ 17; Dkt. No. 14-2 at 18, 24-25, 29, 32, 38.

Accordingly, the BOP credited petitioner with various amounts of extra time towards his federal sentence as the result of its audit. Specifically, the petitioner was given federal credit for (1) the time he spent at Willard before and after his federal criminal prosecution, from June 30, 2015 through August 3, 2015, and from December 16, 2016, through December 23, 2016; (2) the time he was held in the Southern District for his criminal prosecution on the writ of habeas corpus *ad prosequendum*, from August 4, 2015, through December 15, 2016; and (3) the time he was held in excess of his state custody maximum date prior to his federal detainer being lodged, from February 23, 2019, and April 30, 2019. Rohmer Decl. ¶ ¶ 14-18; Dkt. No. 14-2 at 24-25, 27, 29, 38; *see also* Dkt. No. 1-1 at 3, 4, 16, 20; Dkt. No. 16 at 8, 10.

**III.    PRESENT PROCEEDINGS**

Presently before the Court is petitioner's challenge to the Bureau of Prison's ("BOP") calculation of petitioner's time and credits and allegations of instances of illegal interruptions to his sentence.  Pet. at 1-2.³  Petitioner contends that he is entitled to federal habeas relief because (1) the date of the commencement of his federal sentence is incorrect and should be November 30, 2016, *id.* at 6; (2) petitioner has wrongly been deprived of credit from August 4, 2015 through December 15, 2016, *id.* at 6, 8-9; (3) petitioner's sentence was illegally interrupted and interfered with as the result of his release by the United States Marshals on December 15, 2016, *id.* at 7, 9; (4) petitioner's sentence was wrongfully suspended because he did not receive credit from December 24, 2016 through February 21, 2019, *id.* at 8; (5) petitioner has fully exhausted his claims before all administrative bodies, therefore, any remaining administrative remedy requirement must be waived, *id.* at 10; and (6) respondent's decisions thus far have been an abuse of discretion, *id.* at 11.  Petitioner is seeking credit for time he served from August 4, 2015, through May 1, 2019.  *Id.* at 7.  Respondent does not argue that petitioner's claims are unexhausted.

Instead, respondent argues that the petition should be denied for other reasons.  Dkt. No. 14.  First, respondent contends that Attorney General Barr is an improper respondent and should be dismissed from the instant action.  *Id.* at 8-9.  Second, and as is relevant to the merits, respondent contends that the BOP has properly calculated petitioner's sentence. *Id.* at 9-13.  Specifically, respondent argues that (1) petitioner's federal sentence commenced May 1, 2019, not November 30, 2016, *id.* at 11; and (2) petitioner received all the credit to

---

³ For the sake of clarity, citations to petitioner's filings refer to the pagination generated by CM/ECF, the Court's electronic filing system.

5

which he was entitled, *id.* at 11-13. Finally, respondent contends that petitioner's sentence was not illegally interrupted. *Id.* at 13.

Petitioner replies that because he was not an inmate at the time the writ of *ad prosequendum* and the arrest warrant were issued, he was not in state custody and thus his federal sentencing credit should have commenced. Traverse at 3-4. Specifically, "petitioner was exclusively in Federal Custody, when state authorities released petitioner from custody on June 20, 2015," therefore, the writ was invalid. *Id.* at 4-5. Lastly, petitioner argues that he should receive federal sentencing credit for the time of December 23, 2016, through May 1, 2019, because this was also time where "petitioner should have been in primary federal custody" since he was released on supervision from state custody. *Id.* at 4.

## IV. DISCUSSION

### A. Attorney General Barr is Not a Proper Respondent

As an initial matter, respondent argues that the only proper respondent in this action is Warden S. Lovett. Dkt. No. 14 at 8-9. The Court agrees.

The Supreme Court has long held "that in habeas challenges to present physical confinement . . . the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (citing cases).

Here, petitioner is presently incarcerated at Ray Brook Federal Correctional Institute. Therefore, the Warden from Ray Brook, where petitioner is presently detained, is the immediate custodian of petitioner and proper respondent for the instant action. *See e.g.*, *Simmons v. Lovett*, No. 9:20-CV-1344 (TJM), 2021 WL 3269243, at *2 (N.D.N.Y. Jul. 30, 2021) ("Petitions filed under section 2241 must name the petitioner's warden as respondent

and be filed in the district of the petitioner's confinement."); *see also Ranchinskiy v. Barr*, 422 F. Supp. 3d 789, 792 (W.D.N.Y. 2019) (dismissing Attorney General Barr as a respondent in a petition brought pursuant to section 2241 because he did not have "immediate custody over petitioner"). Thus, Attorney General Barr is dismissed from the instant action.

### B. Petition is Meritless

The Second Circuit has consistently held that "[t]he Bureau of Prisons, and not the courts, determines when a[n inmate's] sentence starts and whether the [inmate] should receive credit for any prior time spent in custody." *United States v. Montez-Gaviria*, 163 F.3d 697, 700-701 (2d Cir. 1998) (citing cases). "However, if a[n inmate] disputes the BOP's calculation, he or she may seek judicial review of any jail-time credit determination by filing a habeas corpus petition under 28 U.S.C. § 2241 after exhausting administrative remedies." *Greer v. Hudson*, No. 9:13-CV-0345 (JKS), 2014 WL 2815800, at *2 (N.D.N.Y. June 23, 2014) (citing *United States v. Wilson*, 503 U.S. 329, 335-36 (1992)).

Federal law provides that "[a] sentence to a term of imprisonment commences on the date the [inmate] is received in custody awaiting transportation to, or arrives voluntarily to commence service at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a); *see also Greer*, 2014 WL 2815800, at *2 (explaining "[a] federal sentence commences when a[n inmate] is received by the Attorney General of the United States for service of his federal sentence."). The BOP Program Statement further explains that

> [i]f the prisoner is serving no other federal sentence at the time the sentence is imposed, and is in <u>exclusive</u> federal custody (not under the jurisdiction of a federal writ of habeas corpus ad prosequendum) at the time of sentencing on the basis of the conviction for which the sentence is imposed, the sentence commences on the date of imposition, even if a state sentence is running along concurrently.

7

Dkt. No. 10-11 at 2, Program Statement 5880.28.

Federal law also dictates when and how an inmate will receive credit for prior custody. 18 U.S.C. § 3585(b). Specifically, an inmate

> shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –
>
> > (1) as a result of the offense for which the sentence was imposed; or
> >
> > (2) as a result of any other charge for which the [inmate] was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

*Id.* Awarding a prisoner with double credit for time that has already been counted against another sentence is strictly prohibited. *Id.*; *see also Werber v. United States*, 149 F.3d 172, 173 (2d Cir. 1998) ("18 U.S.C. § 3585(b) bars double-counting."); *Greer v. Hudson*, No. 9:13-CV-0345 (JKS), 2014 WL 2815800, at *3 (N.D.N.Y. June 23, 2014) ("The additional credit [petitioner] seeks is plainly barred by the operation of 18 U.S.C. § 3585(b)."). Therefore, in

> [c]ases involving both state and federal terms of imprisonment . . . a federal sentence is not automatically triggered by the prisoner's transfer to federal custody. . . . [W]here there is a preexisting sentence, primary custody remains vested in the sovereign that first arrests the individual until it relinquishes its priority . . . [Therefore,] while a prisoner may be . . . "loaned" to federal custody pursuant to a writ of habeas corpus ad prosequendum, the state sentence remains operative.

*Crosson v. Recktendald*, No. 1:14-CV-1865, 2015 WL 694831, at *4 (S.D.N.Y. Feb. 18, 2015); *see also United States v. Smith*, 812 F. Supp. 368, 370 (E.D.N.Y. 1993) ("A federal sentence does not begin to run, however, when a[n inmate] is produced for prosecution in federal court pursuant to a federal writ of habeas corpus *ad prosequendum*. Rather, the

state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner in satisfaction of the state obligation") (citing cases).

### 1.     Date Petitioner's Federal Sentence Commenced

Petitioner argues that his federal sentence should have commenced on the day it was imposed, November 30, 2016.  Pet. at 6, 8-9.  Respondent contends that petitioner's federal sentence actually commenced on May 1, 2019, the day on which petitioner was relinquished on his federal detainer.  Dkt. No. 14 at 11.  The Court agrees.

On November 30, 2016, petitioner was only "borrowed" from state authorities pursuant to the federal writ of habeas corpus *ad prosequendum*.  Dkt. No. 14-2 at 22; Dkt. No. 16 at 6.  This did not trigger the commencement of petitioner's federal sentence because he still had a preexisting state obligation to satisfy, namely his parole sentence to Willard Drug treatment.  *See Smith*, 812 F. Supp. at 370-71.

Petitioner argues that because he was treated as a parolee – not an inmate – during his time in Willard, his federal sentence should have commenced in November of 2016.  Pet. at 6, 8-9.  Specifically, petitioner contends that considering the state of New York as his primary custodian from anytime after June 30, 2015, when petitioner reported to Willard, is improper and constitutes an unlawful interruption in his federal sentence.  *Id.*; Traverse at 3-4.  The respondent disagrees.  Dkt. No. 14 at 13.  So does the Court.

Petitioner relies upon his status as a parolee to argue that the state was not his primary custodian.  *See* Dkt. No. 1-1 at 36.  The case upon which petitioner relies to demonstrate that the state was not his primary custodian is *United States v. Smith*, 812 F. Supp. 368.  In *Smith*, the court explained that

9

> [a]s a general rule, the first sovereign to arrest an offender has priority of jurisdiction over him for trial, sentencing, and incarceration. . . . This jurisdiction continues until the first sovereign relinquishes its priority by, for example, bail release, dismissal of the state charges, parole release, or expiration of the sentence.

812 F. Supp. at 370 n.2 (internal citations omitted). Petitioner cites this same language. Dkt. No. 1-1 at 36. However, to arrive at the conclusion which petitioner proffers – once an individual is considered a parolee, the state has automatically relinquished primary custody of the individual – one would have to ignore the clause "for example." This is contrary to the express language of the decision, as well as the spirit of the rule which vests primary custody in a sovereign until the time the individual's obligation to that sovereign has been satisfied. *Smith*, 812 F. Supp. at 370-71.

As previously discussed, petitioner was obligated to finish a period of treatment at Willard, as an alternative to incarceration, for violating his parole. Dkt. No. 14-2 at 24-25, 27, 29. The state, therefore, served as petitioner's primary custodian until it relinquished control of him after his obligation to the state was satisfied. After returning from federal prosecution, via the writ of habeas corpus *ad prosequendum*, petitioner decided not to satisfy his treatment obligation at Willard. Dkt. No. 1-1 at 23, 25. This resulted in another parole violation and subsequent incarceration. *Id.* Petitioner remained in state custody until he was released on his federal detainer, on May 1, 2019. Dkt. No. 14-2 at 29, 38. As discussed *supra*, petitioner remained in state custody past his maximum expiration date; however, that impacts the evaluation of what custody credit petitioner should receive and not who was his primary custodian.

Accordingly, the state was petitioner's primary custodian until his federal sentence

10

commenced, via his release on a federal detainer, on May 1, 2019.

### 2. Federal Custody Credit

Related to the above arguments, petitioner argues that because the state should not have been considered his primary custodian, he was also entitled to additional credit towards his federal conviction. Namely, petitioner seeks credit for his federal sentence for the time he was incarcerated from August 4, 2015, through May 1, 2019. Pet. at 7; *but see* Traverse at 4 (appearing to clarify that the time period in question is actually from December 23, 2016, through May 1, 2019). Respondent asserts that petitioner has received all the credit he is due. Dkt. No. 14 at 9-13. The Court agrees.

### i. June 30, 2015 through December 23, 2016 & February 23, 2019, through April 30, 2019

On February 10, 2020, as a result of petitioner's grievance procedure, he was granted federal custody credit for the time periods of June 30, 2015, through December 23, 2016, and February 23, 2019, through April 30, 2019. Dkt. No. 1-1 at 20.

"Article III, Section 2 of the United States Constitution limits the subject matter of the federal courts to those cases which present a 'case or controversy.'" *Islam v. New York State Bd. of Parole*, No. 9:13-CV-0854 (GTS/TWD), 2016 WL 3943668, at *2 (N.D.N.Y. June 2, 2016) (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)). Accordingly, "in order for there to be a valid exercise of subject matter jurisdiction, a federal court must have before it an actual controversy at all stages of review, not simply at the time it is filed." *In re Flanagan*, 503 F.3d 171, 178 (2d Cir. 2007). "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983).

11

Here, because the BOP reexamined petitioner's file and decided to grant him federal custody credit for these time periods, petitioner has received a portion of the relief he requested. *See* Dkt. No. 14-2 at 38 (petitioner's most recent BOP custody calculation indicating jail credit for the two identified time periods). Accordingly, because the relief sought can no longer be given, no live controversy remains. Thus, petitioner's claim for relief, with respect to these two time periods, is denied as moot.

### ii.     December 24, 2016, through February 22, 2017

The remaining time for which petitioner seeks federal custody credit is for the period of December 24, 2016, through February 22, 2017. According to a DOCCS representative, petitioner was credited with parole jail time during this time period. Dkt. No. 14-2 at 24, 29; *see also* Dkt. No. 1-1 at 23. "Parole jail time is time spent in a county jail while awaiting the results [of a parole] violation [and] . . . it is credited towards the [state] sentence time." Dkt. No. 14-2 at 40. Because petitioner was already given state custody credit for this time period, he is essentially asking for double credit by having this time period also credited towards his federal custody. Because there is a strict policy about double-counting time, petitioner's claim that he is entitled to additional federal custody credit is denied. 18 U.S.C. § 3585(b); *Werber*, 149 F.3d at 173; *Greer*, 2014 WL 2815800, at *3.

### 3.     Alleged Sentence Interruption/Interference

As previously discussed, petitioner contends that his sentence was illegally interrupted and/or interfered with by the unlawful issuance of the writ of habeas corpus *ad prosequendum.* Pet. at 6, 8-9. Respondent argues that this contention is meritless. Dkt. No. 14 at 13. The Court agrees.

A writ of habeas corpus *ad prosequendum* is "used in criminal cases to bring before a

court a prisoner to be tried on charges other than those for which the prisoner is currently being confined." *Black's Law Dictionary* (11th ed. 2019). Here, for the aforementioned reasons, the state was petitioner's primary custodian at the time his federal prosecution was scheduled. Accordingly, an application for a writ of habeas corpus *ad prosequendum* was the appropriate procedural mechanism for the federal authorities to borrow petitioner from his primary state custodian in order to resolve the federal criminal charges lodged against him.

"When a [petitioner] is borrowed from the primary custodian via a writ of habeas corpus *ad prosequendum*, principles of comity require the return of the [petitioner] to the primary custodian when the prosecution has been completed." *Dutton v. United States Attorney Gen.*, 713 F. Supp. 2d 194, 201 (W.D.N.Y. 2010) (citing *Delima v. United States*, 41 F. Supp. 2d 359 (E.D.N.Y. 1999), *aff'd*, 213 F.3d 625 (2d Cir. 2000)). Here, petitioner was appropriately returned to state custody after his federal prosecution, in compliance with the terms of the writ. This was essential so that petitioner could satisfy his remaining obligations to the state, as outlined above.

Accordingly, there was nothing illegal or unlawful about the issuance of the writ of habeas corpus *ad prosequendum* or the return of petitioner to his primary custodian, the state. Therefore, Petitioner is not entitled to any habeas relief.

**V.    CONCLUSION**

**WHEREFORE**, it is

**ORDERED** that Attorney General Barr be **DISMISSED** from the action and the caption updated accordingly; and it is further

**ORDERED** that the petition, Dkt. No. 1, is **DENIED AND DISMISSED** in its entirety; and it is further

13

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

Dated: October 18, 2021

Thomas J. McAvoy
Senior, U.S. District Judge